JOHN B. KILEY, Appellant, *v.* THE WESTERN UNION TELE-
GRAPH COMPANY, Respondent.

109  231
112  411
109  231
124  267
124  272

Telegraph companies are not under the obligations of common carriers; they
do not insure the absolute and accurate transmission of messages deliv-
ered to them, but have the right to protect themselves by agreement
against liabilities they might otherwise incur through the carelessness of
their agents and the mistakes and defaults incident to their business.

Plaintiff had for many years extensively used defendant's blanks in sending
telegrams, and was familiar with their contents. These blanks had
printed at the top a provision that the company should not be liable for
mistakes, delays or the non-delivery of any unrepeated message beyond
the amount received for sending the same, and at the bottom a notice
calling attention to the agreement. In an action to recover damages for
failure to deliver a message written upon one of said blanks, and deliv-
ered by plaintiff to one of defendant's operators and sent by him, which
plaintiff had not ordered to be repeated, it was not shown that the
failure to deliver was due to the willful misconduct or gross negligence
of the defendant. *Held,* that the case was within the letter and purpose of
the stipulation, to which plaintiff must be held to have assented; and that
he was only entitled to recover the amount paid by him for sending the
message.

The blank upon which the message was written when introduced in evi-
dence was mutilated, a portion of the top having been torn off, but there
still remained the provision requiring a message to be repeated and the
agreement relieving defendant from liability for failure to deliver and
for delay in the case of an unrepeated message. There was no evidence
that it was torn when plaintiff wrote the message. *Held,* that it is to be
presumed that the blank was perfect when delivered to defendant; that,
as plaintiff knew that the blanks when complete contained certain agree-
ments, by using this blank and delivering it to defendant, even if it was
then mutilated, he must be held to be bound by the agreement contained
in a perfect blank; also, that enough remained upon the blank as
mutilated to show that the defendant was not to be responsible for an
unrepeated message.

(Argued March 19, 1888; decided April 10, 1888.)

APPEAL from order of the General Term of the Supreme
Court in the fifth judicial department, made the first Tuesday
of October, 1885, which reversed a judgment in favor of
plaintiff, entered upon a verdict, and granted a new trial.
(Reported below, 39 Hun, 158.)

On the 11th day of March, 1883, the plaintiff, who was a speculator in oil, living at Olean, in this State, went to the office of the defendant in that village and there wrote and delivered to its agent for transmission to his brokers, Hilton & Waugh, in Bradford, Pa., a telegram as follows : " Buy the twenty-five in to-morrow morning at best," and paid the charge, fifteen cents, for transmitting the same. By " twenty-five " was meant 25,000 barrels of oil, and the message was so understood by defendant's operator. For some reason the operator could not send it by the direct line to Bradford, and, as was usual in such cases, he undertook to send it by way of Buffalo, and he told the plaintiff, who was still at the office, that he had sent it. It did not reach Bradford and the brokers did not buy the oil ; in consequence thereof the plaintiff suffered damage, which he brought this action to recover. The jury rendered a verdict in his favor.

The other facts, so far as they are material, appear sufficiently in the opinion.

*J. H. Waring* for appellant. As the defendant's operator perfectly understood from the message itself its meaning as well as its value and importance, the damages which were likely to result from a failure to transmit or deliver the message were in the contemplation of the parties at the time the company undertook to send it. (*Rittenhouse* v. *Ind. Line of Tel.*, 44 N. Y. 263 ; *Leonard* v. *N. Y. A. & B. E. M. Tel. Co.*, 41 id. 544 ; *Squire* v. *W. U. Tel. Co.*, 98 Mass. 232 ; *W. U. T. Co.* v. *McKibben*, 14 N. Rep. [No. 10] 894.) The default of which the defendant was guilty is not included in any of the conditions printed on the perfect blanks. (*Sprague* v. *W. U. T. Co.*, 6 Daly, 200 ; 2 R. S. [6th ed.] 632, 634.) The defendant can adopt reasonable rules and regulations for the conduct of its business, but cannot, however, by any rule or regulation of its own making protect itself against liability for the consequences of its own willful misconduct, gross negligence or any conduct inconsistent with good faith. (*Breese* v. *W. U. T. Co.*, 48 N. Y. 138, 141 ; *Ellis* v. *A. T. Co.*, 95

Mass. 226; *U. S. T. Co.* v. *Gildersteen*, 20 Md. 232, 248; *Hart* v. *W. U. T. Co.*, 30 Alb. L. J. 410; *W. U. T. Co.* v. *Wenger*, 56 Penn. St. 262; *Baldwin* v. *W. U. T. Co.*, 45 N. Y. 744, 750; *Tyler* v. *W. U. T. Co.*, 60 Ill. 421; *Leonard* v. *N. Y. & C. Tel. Co.*, 41 N. Y. 544, 572; *Avery* v. *W. U. T. Co.*, 36 Alb. L. J. 311.)

*Wager Swayne* for respondent. . The damage sustained by the plaintiff must be the direct and natural result of the defendant's misconduct to entitle him to recover. (*Hadley* v. *Baxendale*, 9 Exch. 341; *Milwaukee & C. R. R. Co.* v. *Kellogg*, 94 U. S. 474, 475; *Griffen* v. *Colver*, 16 N. Y. 489; *Masterson* v. *Mayor, etc.*, 7 Hill, 61; *Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 744; *Lowery* v. *W. U. Tel. Co.*, 60 id. 198; *McColl* v. *W. U. Tel. Co.*, 7 Abb. N. C. 151; *Beaupre* v. *P. & A. Tel. Co.*, 21 Minn., 155; *Smith* v. *W. U. Tel. Co.*, 83 Ky. 104; *Saunders* v. *Stuart*, 1 C. P. Div. [L. R.] 326; *Graham* v. *W. U. Tel. Co.*, 34 Wis. 471; *W. U. Tel. Co.* v. *Hall*, 16 Wash. L. R. [U. S. C. 1888] 83; *Candee* v. *W. U. Tel. Co.*, 18 U. C., Q. B. 60; *U. S. Tel. Co.* v. *Gildersleeve*, 29 Md. 232; 3 Sutherland on Damages, 298; *Hart* v. *Direct U. S. Cable Co.*, 86 N. Y. 633.) Under the stipulation at the top of the message blank the company cannot be held liable for more than the tolls paid, save in the case of gross negligence or willful misconduct, neither of which are here in proof. (*Swartz* v. *Atlantic & Pacific Tel Co.*, 18 Hun, 158; *W. U. Co.* v. *Carew*, 15 Mich. 525; *Breese* v. *U. S. Tel. Co.*, 48 N. Y. 132; *S. C.*, 137 Mass. 227; *Grinnell* v. *Western Union Co.*, 113 id. 299; *McAndrew* v. *El. Tel. Co.*, 33 Eng. L. and Eq. 180; *S. C.*, 17 C. B. 3; *Birney* v. *N. Y. & Wash. Tel. Co.*, 18 Md. 341; *Redpath* v. *Western Union Co.*, 112 Mass. 71; *Western Union* v. *Buchannan*, 35 Ind. 435; *Schwartz* v. *A. & P. Tel. Co.*, 18 Hun, 158, 159; *Wolf* v. *Western Union Co.*, 62 Penn. St. 82–87; *Young* v. *Western Union Co.*, 65 N. Y. 163, 169; *Hart* v. *Western Union Tel. Co.*, 66 Cal. 579; *Pinckney* v. *W. U. Tel. Co.*, 19

S. C. 71; *Lassiter* v. *W. U. Tel. Co.*, 89 N. C. 334; *U. S. Tel. Co.* v. *Gildersleeve*, 29 Md. 232; *Becker* v. *W. U. Tel. Co.*, 11 Neb. 87; *White* v. *Western Union Tel. Co.*, 14 Fed. R. 710; *Jones* v. *Western Union Tel. Co.*, 18 id. 717; *Camp* v. *Western Union Tel. Co.*, 1 Met. [Ky.] 164; *Leonard* v. *N. Y. & C. Tel. Co.*, 41 N. Y. 544.) The burden of proof is on the plaintiff to show, not merely the fact of failure to transmit or deliver, but also gross negligence or willful misconduct on the part of the defendant so as to give him a cause of action for more than nominal damages. (*Western Union Co.* v. *Buchannan*, 35 Ind. 429; *Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 752; *U. S. Co.* v. *Gildersleeve*, 20 Md. 243; *White* v. *W. U. Co.*, 14 Fed. Rep. 710; *Hart* v. *W. U. Co.*, 66 Cal. 579; *Camp* v. *W. U. Tel. Co.*, 1 Metc. [Ky.] 164.) All messages are taken with reference to printed terms unless otherwise provided by special contract. (*U. S. Tel. Co.* v. *Gildersleeve*, 29 Md. 247; *U. S. Tel. Co.* v. *Buchannan*, 35 Ind. 435; *Lyons* v. *Culbertson*, 83 Ill. 33; *Breese* v. *U. S. Tel. Co.*, 48 N. Y. 139, 142.) The Circuit Court erred in charging the jury that they were to pass upon the question " whether the plaintiff had ever read, in fact, the printed matter upon this paper, and then the only remaining question would be the question of damages. (*Wolf* v. *W. U. Tel. Co.*, 62 Penn. St. 83.) As it is not claimed that any fraud or imposition was practiced by defendant, it will be presumed that plaintiff's writing the message upon one of the defendant's blanks, had notice of such matter, and of the regulations and agreements therein contained, and assented to them. (*Western Union Tel. Co.* v. *Carew*, 15 Mich. 525; *Young* v. *Western Union Tel. Co.*, 65 N. Y. 163; *Breese* v. *U. S. Tel. Co.*, 48 id. 139; *Kirkland* v. *Dinsmore*, 62 id. 178, 179; *Grinnell* v. *W. U. Tel. Co.*, 113 Mass. 299; *Redpath* v. *W. U. Tel. Co.*, 112 id. 71; *Birney* v. *N. Y., etc., Tel. Co.*, 18 Md. 341; *W. U. Tel. Co.* v. *Buchannan*, 35 Ind. 435; *U. S. Tel. Co.* v. *Gildersleeve*, 29 Md. 247; *Lyon* v. *Culbertson*, 83 Ill. 33; *Greene* v. *White*, 37 N. Y. 405; *Clark* v. *Dutcher*, 9 Cow. 674; *Lattimer* v. *Hill*, 8

Hun, 171; *Benedict* v. *Johnson*, 2 Lans. 94; *Carnes* v. *Platt*, 6 Rob. 270.)   Notice to the agent is only notice to the principal where it arises from or is at the time connected with the subject-matter of his agency.   But, unless notice of the facts comes to the agent while he is concerned for the principal, and in the course of the very transaction, it is not notice to the principal.   (Story on Agency, §§ 140, 140b; 2 Pom. Eq. Jur. 118, § 671.)

EARL, J.   The telegram was written on one of the ordinary blanks of the company.   Immediately above the telegram were the words, " send the following message subject to the above terms, which are hereby agreed to."   And below the telegram, in plain letters, were the following words, " read the notice and agreement at the top."   The blank with the telegram written thereon, when introduced in evidence, was partly mutilated, a portion thereof, the upper left-hand corner, having been torn off.   When complete the blank contained this language:  " All messages taken by this company are subject to the following terms:  To guard against mistakes or delays the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison.   For this one-half the regular rate is charged in addition.   It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same."   The defendant relies upon this stipulation as a defense to any recovery in this action.

That a telegraph company has the right to exact such a stipulation from its customers is the settled law in this and most of the other states of the Union and in England. (*McAndrew* v. *Electric Tel. Co.*, 33 Eng. L. and Eq. 180; *Western Union Tel. Co.* v. *Carew*, 15 Mich. 525; *Ellis* v. *Am. Tel. Co.*, 13 Allen, 226; *Redpath* v. *Western Union Tel. Co.*, 112 Mass. 71; *Grinnell* v. *Western, Union Tel. Co.*, 113

id. 299; *Clement* v. *Western Union Tel. Co.*, 137 id. 463; *Schwartz* v. *Atlantic & Pacific Tel. Co.*, 18 Hun, 157; *Baldwin* v. *United States Tel. Co.*, 45 N. Y. 744; *Breese* v. *United States Tel. Co.*, 48 id. 132; *Kirkland* v. *Dinsmore*, 62 id. 171; *Young* v. *Western Union Tel. Co.*, 65 id. 163.) The authorities hold that telegraph companies are not under the obligations of common carriers; that they do not insure the absolute and accurate transmission of messages delivered to them; that they have the right to make reasonable regulations for the transaction of their business, and to protect themselves against liabilities which they would otherwise incur through the carelessness of their numerous agents and the mistakes and defaults incident to the transaction of their peculiar business.

The stipulation printed in the blank used in this case has frequently been under consideration in the courts and has always, in this state and generally elsewhere, been upheld as reasonable.

The plaintiff must be held to have assented to this stipulation. He was familiar with the defendant's blanks, having used them extensively for several years, and he had frequently read the words at the bottom of them, " read the notice and agreement at the top." Therefore, although he may not have known what the precise terms of the stipulations contained in the blank were, yet he knew that some stipulations were therein contained, and he must be held by the use of the blank and its delivery to the defendant to have assented to them.

The evidence brings this case within the terms of the stipulation. It is not the case of a message delivered to the operator and not sent by him from his office. This message was sent, and it may be inferred from the evidence that it went so far as Buffalo, at least; and all that appears further is that it never reached its destination. Why it did not reach there remains unexplained. It was not shown that the failure was due to the willful misconduct of the defendant, or to its gross negligence. If the plaintiff had requested to have the message repeated back to him, the failure would have been detected

and the loss averted. The case is, therefore, brought within the letter and purpose of the stipulation.

But the trial judge held that if the blank upon which the message was written was torn and mutilated as it appeared when introduced in evidence, then the plaintiff was not bound by the stipulation and was entitled to recover, and he submitted to the jury the question as to the mutilation and they returned a special verdict that "it was torn as it now is when it was delivered by the plaintiff."

We are of opinion that the alleged mutilation of the blank is not available to the plaintiff in answer to the protection claimed by the defendant under the agreement for three reasons: (1.) We think there was no evidence which authorized the finding by the jury that the blank was mutilated at the time it was delivered to the defendant. The plaintiff testified that he went to the defendant's office and took up one of the blanks he found there and wrote his message upon it, and that he could not say whether the blank was torn at that time or not, and there is no evidence whatever that it was then torn. There is every presumption that it was in perfect condition at that time, and no presumption that a blank at one time perfect had then become imperfect. These blanks were carefully prepared by the defendant and kept for use in its offices by its customers, and it is not to be supposed that they would keep mutilated blanks on hand, or that a customer would use a mutilated blank. The manager of the defendant's office at Olean swore that he saw the message several times soon after it was delivered to the defendant's operator, and that it was then, according to his best recollection, perfect and unmutilated, and that he afterwards saw it in Buffalo, and then for the first time discovered that a portion of it had been torn off. This is all the evidence on that subject, and we think it is wholly insufficient to show that it was torn at the time it was delivered to the defendant. (2.) Assuming that it was then torn, yet, when plaintiff wrote the message upon it he must be supposed to have intended to be bound by the agreement mentioned therein. He knew that the blanks,

when complete, contained certain agreements, and by using this blank and delivering it to the company, although torn at the time, he must be held to be bound by the agreements contained in a perfect blank. There was no intent to be bound by less, and the mutilation was not intended for the purpose of altering, changing or destroying the agreements. (3.) Enough remained upon the blank, as mutilated, to show the agreement. It contained the following words: "The sender of a message should order it repeated, that is, telegraphed back. For this one-half the regular rate is charged in addition." "It is agreed between the sender, company, that said company shall not be liable for mistakes or delays in the transmission of any unrepeated message, whether happening by negligence of its servants or otherwise." If the language was not full and clear, the plaintiff was put upon inquiry and could have learned the full force of the stipulation by referring to a perfect blank. There was enough to show that the defendant was not to be responsible for an unrepeated message.

We are, therefore, of opinion that the plaintiff was bound by the stipulation contained in the blank, and that it furnished a defense to any recovery, except the amount paid for the transmission of the message, and thus it becomes unimportant to examine other grounds of defense brought to our attention.

The order of the General Term should be affirmed and judgment absolute rendered against the plaintiff, with costs.

All concur, except RUGER, Ch. J., not voting, and DANFORTH, J., dissenting.

Order affirmed and judgment accordingly.