LEEDY *v.* WESTERN UNION TELEGRAPH COMPANY.

(*Knoxville.* September Term, 1914.)

1. **TELEGRAPHS AND TELEPHONES.** Limitation óf liability. Persons affected.

One for whose benefit a contract for the delivery of a telegram was entered into and whose suit for failure to deliver was based thereon, notwithstanding the telegram was sent ·voluntarily by the sender without previous authorization and without the sender's agency, was bound by a stipulation on the back of the message that the company should not be liable for damages for nondelivery, caused by the negligence of its servants or otherwise, beyond $50, unless a greater value was stated in writing when the message was offered and an additional sum paid on such additional value, if valid. (*Post, pp.* 549-552.)

Cases cited and approved:   Manier v. Western U. Tel. Co., 94 Tenn., 442; Bailey v. Western U. Tel. Co., 19 Ann. Cas., 900; Anniston Cordage Co. v. Western U. Tel. Co., 30 L. R. A., 1116; Rhyne v. Western U. Tel. Co., 164 N. C., 394; Western U. Tel. Co. v. Hearn, 110 Ark., 176; Western U. Tel. Co. v. Alford, 110 Ark., 379; Marr ·v. Telegraph Co., 85 Tenn., 529; Railroad v. Smith, 123 Tenn., 678; Hart v. Penn. R. Co., 112 U. S., 331; Primrose v. Western U. Tel. Co., 154 U. S., 1; Adams Express Co. v. Croninger, 226 U. S., 491; Western U. Tel. Co. v. Bilisoly, 82 S. E.; 91; Western U. Tel. Co. v. Compton, ₁69 S. W., 946; Western U. Tel. Co. v. Commercial Milling Co., 218 U. S., 406.

2. **TELEGRAPHS AND TELEPHONES.** Limitation of liability. Effect. Gross negligence.

A provision on the back of a telegraph form that the company will not be liable for damages for mistakes, nondelivery, etc., caused by the negligence of its servants or otherwise, beyond $50, unless a greater value was stated in writing when the message was offered and an additional sum paid on such ad-

ditional value, if a valid limitation of liability, did not relieve the company from liability for the gross negligence of its agents and employees, whereby it was not delivered. (*Post, pp.* 552, 553.)

Cases cited and approved: Weld v. Postal Tel. Co., 199 N. Y., 88; Id., 210 N. Y., 59; Halsted v. Postal Tel. Co., 193 N. Y., 293; Kiley v. Western U. Tel. Co., 109 N. Y., 231; Wheelock v. Postal Tel. Co., 197 Mass., 119; U. S. Tel. Co. v. Gildersleve, 29 Md., 232; Postal Tel. Co. v. Nichols, 159 Fed., 643.

FROM HAMILTON.

Error to the Circuit Court of Hamilton County.— NATHAN L. BACHMAN, Judge.

JOE V. WILLIAMS and NEAL L. THOMPSON, for plaintiff in error.

SHIELDS & CATES and BROWN, SPURLOCK & BROWN, for defendant in error.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Plaintiff brought suit as addressee of a telegraph message sent over defendant's line from Harrisburg, Pa., to Chattanooga, Tenn., for failure to deliver same at the pont of contract delivery. The court of civil appeals has found that the telegraph company was guilty of very great negligence, or gross negligence as we understand, in failing to deliver the telegram; but that court further held that the defendant company was not liable because of a stipulation which appeared up-

on the back of the message, which became a part of the contract, to wit:

"In any event, the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery of this message, whether caused by the negligence of its servants or otherwise, beyond the sum of $50, at which amount this message is hereby valued, unless a greater value is stated in writing hereon at the time the message is offered to the company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. hereof."

That court held this stipulation for limitation of liability valid and enforceable, and the arguments of counsel of parties in this court have for the most part been directed to the correctness of that ruling.

In behalf of plaintiff Leedy, it is urged that he, as addressee, did not assent to and is not bound by the stipulation for limitation of liability. The contract was entered into for the benefit of Leedy, his suit is based thereon, and he is bound by the stipulation, if valid, notwithstanding the telegram was sent voluntarily by its sender; that is, without previous authorization and without the sender being agent, proper, of the addressee. *Manier* v. *Western Union Telegraph Co.*, 94 Tenn. (10 Pickle), 442, 29 S. W., 732; note to *Bailey* v. *Western Union Telegraph Co.*, 19 Ann. Cas., 900; and note to *Anniston Cordage Co.* v. *Western Union Telegraph Co.*, 30 L. R. A. (N. S.), 1116.

In behalf of the telegraph company it is urged that the above-quoted stipulation is reasonable, valid, and enforceable, in that same is not an attempt on its part to stipulate for immunity from liability on account of negligence of its agents in handling the message. The contrary of this contention has been held, with respect to this provision of the contract, in the very recent cases of *Rhyne* v. *Western Union Telegraph Co.,* 164 N. C., 394, 80 S. E., 152; *Western Union Telegraph Co.* v. *Hearn,* 110 Ark., 176, 161 S. W., 1025; *Western Union Telegraph Co.* v. *Alford,* 110 Ark., 379, 161 S. W., 1027, 50 L. R. A. (N. S.), 94.

We need not determine, in the present case, the point whether or not this stipulation, if deemed governable by state legislation or decisions, is valid under the tests laid down in *Marr* v. *Telegraph Co.,* 85 Tenn. (1 Pickle), 529, 3 S. W., 496, and in *Railroad* v. *Smith,* 123 Tenn., 678, 134 S. W., 866, for the reason that the court of civil appeals has found the telegraph company to have been guilty of gross negligence, the effect of which is later in this opinion pointed out.

The chief contention of the defendant company is that since the passage by congress of the Act of June 18, 1910 (chapter 309, 36 Stat. 539; 1 Fed. Statutes Ann. Supp. 1912, p. 112), amending the Interstate Commerce Act so as to include telegraph companies, and giving power to the Interstate Commerce Commission to regulate the rates and the classification of messages of telegraph companies, decisions of the courts of this State in respect to the validity of such stipulation, for-

merly applicable, are no longer so, since complete control of the subject-matter has been taken over by the federal authorities, and that this operates to make applicable rulings of the federal courts in respect of the validity of such contractual limitations. It is urged, further, that the quoted contract provision is valid under the rulings of the federal courts in *Hart* v. *Penn. R. Co.,* 112 U. S., 331, 5 Sup. Ct., 151, 28 L. Ed., 717, *Primrose* v. *Western Union Telegraph Co.,* 154 U. S., 1, 14 Sup. Ct., 1098, 38 L. Ed., 883, and *Adams Express Co.* v. *Croninger,* 226 U. S., 491, 33 Sup. Ct., 148, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257; and that the enforcement by us of liability in disregard of the stipulation, thus held valid, would be forbidden interference with interstate commerce, under what is urged to be the doctrine of the case of *Adams Express Co.* v. *Croninger, supra.*

Whether this contention is correct has not yet been passed upon by the supreme court of the United States or by any one of the circuit courts of appeals. It is sustained by the supreme court of appeals of Virginia in *Western Union Telegraph Co.* v. *Bilisoly,* 82 S. E., 91, but refuted by the supreme court of Arkansas in the case of *Western Union Telegraph Co.* v. *Compton,* 169 S. W., 946, where, however, the judgment was in favor of the company on another ground. It is not necessary for us to pass upon this question here, or to determine whether under the doctrine of *Western Union Telegraph Co.* v. *Commercial Milling Co.,* 218 U. S., 406, 31 Sup. Ct., 59, 54 L. Ed., 1088, 36 L. R. A. (N. S.),

220, 21 Ann. Cas., 815, and cases therein cited, state legislation and decisions touching the invalidity of such stipulation would yet be ''not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce,'' or whether congress will be taken to have acted or not acted specifically in respect of the immediate subject-matter (the right to so stipulate); or, again, whether a telegraph message is in the nature of things susceptible to an assessment of value in advance, as is a shipment of freight, to afford a reasonable basis for the fixing of rates.

Let it be assumed that the amendatory act of June 18, 1910, operated, notwithstanding the above considerations, to draw this matter to federal authority, exclusive of the states, and so far forth as to render the federal decisions alone applicable on the point of the validity of such a stipulation: Then, even in those jurisdictions where such provisions in telegraph contracts are upheld as valid limitations of liability, it is further held that public policy forbids that they be given operation to relieve the company from liability caused by the gross negligence of the telegraph company's agents and employees. *Weld* v. *Postal Telegraph Co.*, 199 N. Y., 88, 92 N. E., 415; Id., 210 N. Y., 59, 103 N. E., 957; *Halsted* v. *Postal Telegraph Co.*, 193 N. Y., 293, 85 N. E., 1078, 19 L. R. A. (N. S.), 1021, 127 Am. St. Rep., 952; *Kiley* v. *Western Union Telegraph Co.*, 109 N. Y., 231, 16 N. E., 75; *Wheelock* v. *Postal Telegraph Co.*, 197 Mass., 119, 83 N. E., 313, 14 Ann.

Cas., 188; *U. S. Telegraph Co.* v. *Gildersleve,* 29 Md., 232, 96 Am. Dec., 519. And this is the rule in the federal courts. *Postal Telegraph Co.* v. *Nichols,* 159 Fed., 643, 89 C. C. A., 585, 16 L. R. A. (N. S.), 870, 14 Ann. Cas., 369, and federal cases therein cited.

Gross negligence being found, as above shown, the defendant company cannot invoke the stipulation for its protection.

If it could not do so in the federal courts, it would seem that there is no virtue left in its main contention before us.

The judgment of the court of civil appeals is reversed, and the judgment of the circuit court in favor of plaintiff affirmed.